**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

**ENGER FAMILY PARTNERSHIP**, a Colorado limited liability limited partnership,

Plaintiff,

v.

**CONTINENTAL WESTERN GROUP**, a Delaware limited liability company,

Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

COMES NOW, Plaintiff, Enger Family Partnership, L.L.L.P. by and through its attorneys, Furtado Law PC, for its Complaint against the above-named Defendant Continental Western Group, and states as follows:

## I.   NATURE OF THE ACTION

1.    Plaintiff brings this action seeking economic and non-economic damages related to Defendant's breach of an insurance contract and statutory claims pursuant to C.R.S. §§10-3-1115 and 10-3-1116 arising from Defendant's unreasonable delay and denial of timely payment for insurance benefits. Plaintiff also seeks damages arising from Defendant's bad faith breach of insurance contract as well as Defendant's breach of the covenant of good faith and fair dealing.

## II.  PARTIES

2.    Enger Family Partnership, L.L.L.P. ("Plaintiff") is a Colorado limited liability limited partnership with its principal place of business at 1530 Teller Street, Denver, CO 80215.

3.    Continental Western Group, L.L.C. ("Defendant") is a foreign corporation with its principal place of business located in Iowa and was authorized to do business in Colorado during the May 8, 2017 date-of-loss.

## III.  JURISDICTION AND VENUE

4.    Jurisdiction is asserted pursuant to 28 U.S.C. §1332 and 28 U.S.C. § 1391. The amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. Venue is proper because Defendant's insurance policy was purchased in Colorado and was intended to provide coverage for a property located in Colorado.

## IV. GENERAL ALLEGATIONS

5.    Plaintiff sought and obtained an insurance policy, Policy No. CPA3011451 ("the Policy"), for multiple commercial buildings located at 7033 W. Colfax, Lakewood CO 80214; 7101 W. Colfax, Lakewood CO 80214; 1560 Teller St., Lakewood CO 80214; 1730 W. 16th Ave., Lakewood CO 80214; and 3300 W. 32nd Ave. Denver CO 80211 ("the Property").

6.    On or about May 8, 2017, a hail and windstorm hit Plaintiff's Property causing exterior property damage to buildings one, two, three, four, and nine.

7.    Shortly after, Plaintiff filed its claim with Defendant and Defendant issued claim number 40121172.

8.     Defendant's adjusters Douglas Wilmert and Lori Clark were assigned to adjust the loss.

9.     Defendant assigned James Fallis of Team One Adjusting Services, L.L.C. ("Team One") to conduct an inspection of the loss.

10.    On or about May 11, 2017, Team One inspected the property.

11.    On or about May 19, 2017, Team One issued their report and Xactimate estimate for damages Plaintiff incurred on the date-of-loss.

12.    Team One's estimate included an Actual Cash Value ("ACV") of $335,192.95, a Depreciation amount of $290,563.88, and a Replacement Cost Value ("RCV") of $625,756.83.

13.    Upon information and belief, Team One's estimate and report missed damages to the interior that were obvious and present during the inspection.

14.    Team One's estimate and report did not provide any consideration for General Contractor Overhead and Profit ("GCOHP").

15.    Team One's estimate did not adequately estimate the cost to repair the damages to the property caused by the hailstorm on the date-of-loss.

16.    Upon information and belief, Defendant sent a check for the undisputed ACV amount sometime in June of 2017 that Plaintiff never received.

17.    In June of 2017, Defendant's adjusters, Douglas Wilmert and Lori Clark, referred Contractors AP Roofing & Specialty Coatings ("AP Roofing") and BluSky Restoration Contractors, L.L.C. ("BluSky") to Plaintiff to make a bid.

18.    On June 19, 2017, Mr. Wilmert accompanied AP Roofing's representative, John Parsons to the property during AP Roofing's inspection.

19.   AP Roofing's estimate was for an RCV of $643,854.06.

20.   AP Roofing's estimate did not provide for interior damage, GCOHP, and the detaching and resetting of HVAC units among other items.

21.   After AP Roofing's inspection and estimate, Mr. Wilmert called Plaintiff multiple times to inquire whether Plaintiff was going to hire AP Roofing to conduct repairs.

22.   Upon information and belief, Mr. Wilmert sought to pressure or convince Plaintiff to accept AP Roofing's estimate.

23.   On June 21, 2017, Dave Brewer of BluSky submitted a Roofing Proposal for the full roof replacement of the property for an RCV of $623,841.00.

24.   BluSky's estimate did not include GCOHP, work for interiors, detaching or resetting HVAC units, permit fees, and code upgrades among other items.

25.   Upon information and belief, BluSky created a Roofing Proposal without a site visit.

26.   After receiving both repair estimates/proposals, Plaintiff sought their own contractor to make repairs to the property.

27.   On or about July 10, 2017, fifty-two days after Team One's May 19, 2017 report recommending the payment of the undisputed ACV amount, Plaintiff finally received the check for the ACV for the property damage.

28.   On or about July 11, 2017, Plaintiff received an Xactimate estimate from Interstate Roofing for an RCV of $1,654,132.09.

29.   Interstate Roofing sends two supplemental estimates with an RCV of $1,939,190.53 in August of 2017, and an RCV of $1,562,183.69 in September of

2018 as part of the negotiation with Defendant between July and October of 2017.

30.   On or about October 13, 2017, Defendant and Interstate Roofing finally agreed to the replacement cost of the roofs at an RCV of $1,193,845.44.

31.   On October 13, 2017, Mr. Wilmert sends Plaintiff an email indicating that there would be a reduction of $102,056.00 due to the limits of her code upgrade coverage.

32.   Defendant has refused to pay for any code upgrades to date until Plaintiff has incurred the cost of the entire scope of code upgrades assessed in October 23, 2017.

33.   In that same October 13, 2017 email, Mr. Wilmert indicates that the investigation of the HVAC units are incomplete and are being looked at by an engineering firm called "CSI."

34.   In that same email, Mr. Wilmert stated that Defendant will be issuing a supplemental check for the ACV of the building's roof repairs.

35.   Over two months after this email, Defendant sends a second undisputed ACV check on December 15, 2017.

36.   On February 20, 2018, Plaintiff submitted a supplemental claim from Trilogy Builders, Inc. for the interior damages and exterior repairs missed in the initial adjustment totaling $207,455.13.

37.   Trilogy Builders' supplemental claim included invoices paid by Plaintiff for damage mitigation and an Xactimate estimate an RCV of $184,342.63 for remaining interior repairs.

38.   The next day, Mr. Wilmert disputes the supplement by email suggesting that the interior damages were caused by Plaintiff's failure to mitigate damages after the date-of-loss.

39.   In fact, Plaintiff had conducted numerous temporary emergency repairs at various points during the adjustment process.

40.   Various invoices paid by Plaintiff for these temporary emergency repairs were included in Trilogy Builder's supplement for interior damages.

41.   On April 12, 2018, rather than seek to indemnify Plaintiff for the water damage caused by the date-of-loss, Mr. Wilmert requested leases from Plaintiff's tenants to ascertain whether tenants were responsible for interior damage.

42.   The request for the leases were without a reasonable basis as Defendant was plainly aware that the policy would cover interior damage caused by the hailstorm.

43.   Upon information and belief, Defendant's request to see these leases was an attempt to avoid paying benefits Defendant knew was covered under the policy.

44.   Defendant, without a reasonable basis, has not yet paid for the interior damage identified in the February 20, 2017 supplement.

45.   Defendant, without a reasonable basis delayed approving a scope of repair with Interstate in a timely manner exacerbating water damage to the property between June and October 2017.

46.   Defendant, without a reasonable basis, failed to fully document and inspect the interior damage to the property.

47.   Defendant, without a reasonable basis, failed to account for any GCOHP.

48.     Defendant, without a reasonable basis, failed to account for a number of required line items in its estimates including, but not limited to interior damage and GCOHP.

49.     Defendant, without a reasonable basis, attempted to pressure the insured to accept its recommended roofing contractor whose bids mirrored or were substantially similar to Defendant's unreasonable initial estimate.

50.     Defendant failed to indemnify Plaintiff for the appropriate amount-of-loss for damages flowing from the May 8, 2017 hailstorm.

## V.     FIRST CLAIM FOR RELIEF
(*Breach of Contract*)

51.     Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

52.     The Policy creates a contract of insurance.

53.     By its actions, as described above, Defendant breached the contract of insurance.

54.     As a direct and proximate result of said breach, the Plaintiff is entitled to damages in an amount to be determined at trial.

## VI.     SECOND CLAIM FOR RELIEF
*(Violation of C.R.S. §10-3-1115 and Relief Pursuant to §10-3-1116)*

55.     Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

56.     C.R.S. §10-3-1115 forbids an insurer from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

57.     Plaintiff is a first-party claimant under C.R.S. §10-3-1115.

58.   Defendant has denied the Plaintiff's claim without a reasonable basis within the meaning of C.R.S. §10-3-1115.

59.   C.R.S. §10-3-1116 provides that a first-party claimant whose claim has been unreasonably delayed by an insurer may bring an action in Colorado district court to recover reasonable attorneys' fees and court costs and two times the covered benefit.

60.   Because of Defendant's actions, as described above, violate C.R.S. §10-3-1115, Plaintiff brings this claim to recover its reasonable attorneys' fees and court costs and two times the covered benefit, as allowed under C.R.S. §10-3-1116.

## VII.   THIRD CLAIM FOR RELIEF
(*Bad Faith Breach of Insurance Contract and the Breach of the Covenant of Good Faith and Fair Dealing*)

61.   Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

62.   Defendant sold Plaintiff the coverage at issue intending to provide benefits for the covered losses such as hailstorms that occur within the policy period.

63.   Defendant had a duty to act reasonably and in good faith in handling Plaintiff's claims and in the payment of Plaintiff's insurance claims, including the obligation to act with ordinary, reasonable diligence in investigating the claims submitted by Plaintiff and in determining the amounts due and owing under the Policy in question, and to pay all amounts due and owing.

64.   Pursuant to the Policy, Defendant owed Plaintiff the duty of good faith and fair dealing.

65.   Defendant owed Plaintiff the non-delegable duty to investigate the claim objectively and not just to hunt for facts from which to deny benefits or attempt to not pay the correct amount owed.

66.   Defendant owed Plaintiff the duty to give equal consideration to the financial interests of its insured and not to give greater consideration to its own financial interests while investigating and adjusting its insured's claims.

67.   Plaintiff cooperated with Defendant in the processing of its claim for the covered benefits.

68.   Plaintiff did not fail to mitigate or minimize its damages.

69.   Plaintiff cooperated with Defendant's investigation and did not erect any obstacles to Defendant's ability to investigate and evaluate Plaintiff's claims for the covered benefits owed.

70.   Defendant knew that Plaintiff purchased the Policy to protect the covered premises.

71.   Defendant knew that its decision to deny benefits owed to Plaintiff was intentional and not accidental.

72.   Defendant knew that its decision to deny paying benefits owed to Plaintiff would cause emotional distress and harm.

73.   Defendant knew that it owed an obligation of good faith and fair dealing to Plaintiff.

74.   Defendant knew that its denial to pay the benefits owed would cause Plaintiff financial hardship.

75.    Defendant should have known that its conduct was unreasonable and/or Defendant recklessly disregarded the fact that its conduct was unreasonable.

76.    Defendant breached its duty to act reasonably and in good faith by, *inter alia*, (1) failing to conduct a reasonable and timely investigation of the facts and law applicable to this matter; (2) failing to appraise the entire loss that resulted from hail; (3) favoring its interests to the exclusion of Plaintiff; (4) failing to effectuate prompt, fair and equitable resolution of the claims after liability has become clear; (5) conducting an incomplete, or outcome-oriented investigation of the loss; (6) delegating its investigation to others without the proper background, knowledge or experience to do so; (7) by improperly directing its agent and representative to perform a cursory investigation of the damage to the property; (8) sending incorrect coverage of loss decisions; (9) compelling Plaintiff to become involved in litigation without conducting a thorough investigation forcing its insured to become involved in litigation to recover amounts due; and (10) otherwise unreasonably and improperly handling this claim as an unfair settlement practice pursuant to C.R.S. § 10-3-1104(1)(h).

77.    Defendant breached its obligations to Plaintiff by failing to pay the proper amount on Plaintiff's claims by hiring agents/adjusters and estimators who did not properly investigate the loss.

78.    Defendant breached its duty of good faith and fair dealing by failing to conduct a proper investigation of the loss.

79.    Defendant's conduct constitutes a breach of the covenant of good faith and fair dealing implied in every contract of insurance.

80.     Defendant's bad faith and breach of its covenant of good faith and fair dealing has caused Plaintiff to suffer and continue to suffer damages, attorneys' fees and costs incurred in bringing this lawsuit, together with pre-judgment interest at the highest rate allowed by law.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks that this Court enter judgment in its favor and against Defendant on its Claims for Relief as follows:

1.     Damages for Defendant's breach of contract;

2.     All unpaid covered benefits owed under the party;

3.     Two times the amount of all covered benefits under the Policy;

4.     Costs, expert witness fees, and attorneys' fees per statute incurred in prosecuting its claims;

5.     Other damages including attorney fees resulting from Defendant's bad faith and breach of the covenant of good faith and fair dealing including damages resulting from Defendant's bad faith refusal to cover the damages to Plaintiff's property;

6.     Damages for Defendant's breach of the covenant of good faith and fair dealing;

7.     Pre- and post-judgment interest; and

8.     For such other and further relief as this Court may deem just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Respectfully submitted this 8th day of May 2018.

*/s/Matthew Hamblin*
David J. Furtado, Esq.
Matthew Hamblin, Esq.
Furtado Law PC
3773 Cherry Creek N. Drive Suite 755
Denver, CO 80209
Telephone: (303)755-2929
FAX: (720) 242-7365
E-mail: matthew@furtadolaw.com
Attorneys for Plaintiff
Enger Family Partnership, LLLP

12